WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emily Cota,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Paul Penzone, et al.,<br><br>　　　　　Defendants. | No. CV-18-02535-PHX-RM<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss. (Doc. 25.) Defendants Bratt and Fortner argue that Plaintiff's First Amended Complaint ("FAC") (Doc. 24) fails to state a cognizable claim, that relief is barred by the doctrine of qualified immunity, and that the allegations against Defendant Fortner lack the factual specificity required to state a claim.

## I.　Factual Background

Plaintiff's FAC alleges the following:[1]

Defendants are Maricopa County Sheriff Deputies Bratt and Fortner. (Doc. 24 ¶¶ 29, 38.) At about 10:50 p.m. on August 30, 2016, Defendants were on patrol and initiated a stop of a Ford Mustang. (*Id.* ¶¶ 9, 12.) Defendants ordered two female passengers to exit the vehicle and asked for their names and identification. (*Id.* ¶ 15.) Neither woman had identification and both giggled while providing Defendants their names. (*Id.* ¶¶ 15-16.)

---

[1] At the motion-to-dismiss stage, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Silvas v. E\*Trade Mrtg. Corp.,* 514 F.3d 1001, 1003 (9th Cir. 2008).

One of the women falsely identified herself to Defendants as "Emily Cota." (*Id.* at ¶ 19.) Deputy Bratt ran that name through the Motor Vehicle Department database but found that the photograph of Emily Cota on record did not match the individual who had provided that name. (*Id.* at ¶ 20.) The other female passenger, now known to be Tania Hernandez, then falsely stated that in fact *she* was "Emily Cota," and that she had "switched names" with the other woman. (*Id.* ¶¶ 18, 21.) Ms. Hernandez stands at least five feet and six inches tall and weighs at least 160 pounds, while Emily Cota is five feet and three inches tall and weighs 110 pounds. (*Id.* ¶ 56.) Deputy Bratt asked Ms. Hernandez, who continued to maintain that she was in fact "Emily Cota," for her address. (*Id.* ¶ 22.) Ms. Hernandez provided the address 580 W. Galveston Road, Chandler, Arizona, which did not match Emily Cota's address on file. (*Id.* ¶¶ 22-23.) Ms. Hernandez told Deputy Bratt that the address didn't match because she had just moved in with the other occupants of the Mustang, but none of the occupants' addresses matched the one given by Ms. Hernandez. (*Id.* ¶¶ 24-25.) Deputy Bratt then searched Ms. Hernandez's purse, finding state identification and Social Security cards bearing the name "Tania Hernandez." (*Id.* ¶¶ 26, 65.)

Despite the above-described indicia of unreliability as to Ms. Hernandez's claim to be "Emily Cota," Defendants conducted no further investigation into Ms. Hernandez's identity. (*Id.* ¶ 59.) Neither Defendant searched a police computer for the name Tania Hernandez, which was found on her identification and Social Security card. (*Id.* ¶ 67.) Neither Defendant asked Ms. Hernandez why, if she was in fact "Emily Cota," she was carrying identification for a Tania Hernandez. (*Id.* ¶ 68.) Instead, they took Ms. Hernandez's insistence that she was "Emily Cota" at face value and conducted no further investigation. (*Id.* ¶ 59.)

Defendants found marijuana in Ms. Hernandez's possession, and subsequently completed an incident report swearing that the marijuana was found in the possession of "Emily Cota." (*Id.* ¶ 47.) The incident report, which was authored by Deputy Bratt, falsely stated that Defendants had verified Emily Cota's identity (*Id.* ¶ 72.) That incident report

One of the women falsely identified herself to Defendants as "Emily Cota." (*Id.* at ¶ 19.) Deputy Bratt ran that name through the Motor Vehicle Department database but found that the photograph of Emily Cota on record did not match the individual who had provided that name. (*Id.* at ¶ 20.) The other female passenger, now known to be Tania Hernandez, then falsely stated that in fact *she* was "Emily Cota," and that she had "switched names" with the other woman. (*Id.* ¶¶ 18, 21.) Ms. Hernandez stands at least five feet and six inches tall and weighs at least 160 pounds, while Emily Cota is five feet and three inches tall and weighs 110 pounds. (*Id.* ¶ 56.) Deputy Bratt asked Ms. Hernandez, who continued to maintain that she was in fact "Emily Cota," for her address. (*Id.* ¶ 22.) Ms. Hernandez provided the address 580 W. Galveston Road, Chandler, Arizona, which did not match Emily Cota's address on file. (*Id.* ¶¶ 22-23.) Ms. Hernandez told Deputy Bratt that the address didn't match because she had just moved in with the other occupants of the Mustang, but none of the occupants' addresses matched the one given by Ms. Hernandez. (*Id.* ¶¶ 24-25.) Deputy Bratt then searched Ms. Hernandez's purse, finding state identification and Social Security cards bearing the name "Tania Hernandez." (*Id.* ¶¶ 26, 65.)

Despite the above-described indicia of unreliability as to Ms. Hernandez's claim to be "Emily Cota," Defendants conducted no further investigation into Ms. Hernandez's identity. (*Id.* ¶ 59.) Neither Defendant searched a police computer for the name Tania Hernandez, which was found on her identification and Social Security card. (*Id.* ¶ 67.) Neither Defendant asked Ms. Hernandez why, if she was in fact "Emily Cota," she was carrying identification for a Tania Hernandez. (*Id.* ¶ 68.) Instead, they took Ms. Hernandez's insistence that she was "Emily Cota" at face value and conducted no further investigation. (*Id.* ¶ 59.)

Defendants found marijuana in Ms. Hernandez's possession, and subsequently completed an incident report swearing that the marijuana was found in the possession of "Emily Cota." (*Id.* ¶ 47.) The incident report, which was authored by Deputy Bratt, falsely stated that Defendants had verified Emily Cota's identity (*Id.* ¶ 72.) That incident report

triggered a felony criminal complaint against the real Emily Cota. (*Id.* ¶ 73.) The report included the name, date of birth, and driver's license number of the real Emily Cota, information which Deputy Bratt retrieved from his police computer. (*Id.* ¶¶ 50-55.) He did not say in the report that he got this information from his computer, nor that "Emily Cota" did not provide any identification. (*Id.* ¶ 51.) Deputy Bratt's incident report also did not state that he found identification and a Social Security card with the name "Tania Hernandez" on the person purporting to be Emily Cota. (*Id.* ¶¶ 69-70.)

Based on the misstatements and omissions in the incident report, a Maricopa County Judicial Officer found probable cause to issue a summons for the real "Emily Cota." (*Id.* ¶¶ 73-75.) The summons was directed to the address provided by Tania Hernandez, 580 W. Galveston Road, Chandler Arizona. (*Id.* ¶ 30.) The summons was returned to the Maricopa County Attorney's Office as non-deliverable, and a warrant was subsequently issued for Emily Cota's arrest. (*Id.* ¶¶ 31-32.) Ms. Cota was forced to employ counsel to respond to the warrant and the pending criminal charges. (*Id.* ¶ 33.) The charges were eventually dismissed without prejudice on February 7, 2018. (*Id.* ¶ 37.)

## II. Procedural History

Plaintiff filed her Complaint on August 10, 2018. (Doc. 1.) Defendants filed a Motion to Dismiss for Failure to State a Claim (Doc. 18) as well as an Answer (Doc. 17). On February 01, 2019, the Court granted Defendants' Motion to Dismiss and granted Plaintiff leave to file an amended complaint. (Doc. 23.) Plaintiff filed the operative FAC on February 12, 2019. (Doc. 24.) Plaintiff's FAC alleges two causes of action under 42 U.S.C. § 1983. First, she alleges that Defendants, acting under color of law, violated her due process rights. (*Id.* ¶¶ 41-84.) Second, she alleges a substantive due process violation. (*Id.* ¶¶ 85-93.) Defendants filed the pending Motion to Dismiss on February 26, 2019. (Doc. 25.) Plaintiff filed a Response to Defendants' Motion to Dismiss (Doc. 26) and Defendants filed a Reply. (Doc. 27.)

. . . .

. . . .

**III. Defendants' Motion to Dismiss**

Defendants move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 25.) Defendants make several arguments. First, they argue that Plaintiff's claims are properly analyzed under the Fourth Amendment and that Plaintiff fails to state a claim for a violation of her Fourth Amendment rights. Second, they argue that Plaintiff fails to state a valid claim for a substantive due process violation. Third, they argue that the allegations in the FAC mostly relate to Defendant Deputy Bratt, and that the allegations against Defendant Fortner lack the requisite specificity to support a claim of a constitutional violation. Finally, Defendants argue in the alternative that, even if the Court finds that Plaintiff has stated a constitutional claim, that the complaint should nonetheless be dismissed because Defendants are protected by qualified immunity.

**A. Legal Standard for 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988). To survive a Rule 12(b)(6) motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

**B. Plaintiff's Claims are Properly Analyzed Under Fourth Amendment**

Plaintiff alleges two counts against Defendants. (Doc. 24). First, Plaintiff alleges that Defendants violated her "due process" rights under "the United States Constitution, including, but not limited to, Amendments IV, V, and XIV" to be free from arrest without probable cause. (*Id.* ¶ 79.) Second, Plaintiff alleges that Defendants violated her "substantive due process" rights "to be free from arrest, the threat of arrest, or to answer for criminal charges without a finding of probable cause." (*Id.* ¶ 88.) Plaintiff charges that Defendants' actions were "malicious, punitive, and in reckless disregard of Plaintiff's rights" and that punitive damages should be awarded. (*Id.* ¶ 92-93.)

Plaintiff thus identifies both counts as due process violations. The Due Process Clause of the Fourteenth Amendment can support "three kinds of § 1983 claims." *Zinermon v. Burch,* 494 U.S. 113, 125 (1990). "First, the Clause incorporates many of the specific protections defined in the Bill of Rights." *Id*. Among those protections are the Fourth Amendment's prohibition against unreasonable searches and seizures absent probable cause. *See Gerstein v. Pugh,* 420 U.S. 103, 111-16, 124-25 (1975). "Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon*, 494 U.S. at 125 (citation omitted). Third, "procedural due process claims" challenge not the "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property,'" but rather the "deprivation of such an interest without due process of law." *Id.* (citation omitted).

Plaintiff's "substantive due process" claim ("Count Two") cannot survive as such. "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver,* 510 U.S. 266, 272 (1994). A right "to be free from criminal prosecution except upon probable cause," in contrast, cannot support a "substantive due process" claim. *Id.* "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular source of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)).

By virtue of its incorporation into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty. *Gerstein*, 420 U.S. at 111-16, 124-25. A claim that a state actor deprived an individual of liberty "is cognizable under § 1983 as a violation of the Fourth Amendment" when done "without probable cause or other justification." *Dubner v. City & Cnty. of S.F.,* 266 F.3d 959, 964 (9th Cir. 2001). Therefore, the Fourth Amendment's guarantee of probable cause "provides an explicit

textual source of constitutional protection," against the conduct alleged here, and the Court will therefore analyze Plaintiff's "substantive due process" claim under the Fourth Amendment. *Albright*, 510 U.S. at 273.

Plaintiff's other count ("Count One") is styled as "Due Process: No Probable Cause." Plaintiff challenges Defendants' alleged misconduct and lack of diligence in investigating and reporting on the crime that led to a warrant to be issued for Plaintiff's arrest. Notwithstanding Plaintiff's reference to "the United States Constitution, including, but not limited to, Amendments IV, V, and XIV," Plaintiff does not state a "procedural due process" claim because she does not directly challenge the "constitutional adequacy" of the "process" used by Maricopa County in issuing warrants. *Zinermon,* 494 at 125. Nor does she challenge the County's post-deprivation "process[es]." *Id.* Rather, she challenges the alleged actions and omissions of Defendants in a particular instance, which she alleges caused a warrant to be issued without probable cause. As such deprivations of liberty without probable cause are readily "cognizable under § 1983 as a violation of the Fourth Amendment," the Court will analyze Plaintiff's first count under the Fourth Amendment. *Dubner,* 266 F.3d at 964.

Both counts therefore allege the same Fourth Amendment violation and effectively merge. Therefore, Plaintiff's "due process" claim in "Count One" will be construed as a violation of the probable cause requirement of the Fourth Amendment and her "substantive due process" claim in "Count Two" will be dismissed with prejudice.

### C.  Probable Cause for Issuance of a Warrant

#### 1.  Legal Standard

In general, a claim that an individual was wrongfully arrested pursuant to a facially valid warrant cannot support a § 1983 action for a Fourth Amendment violation. *See Baker v. McCollan,* 443 U.S. 137, 144 (1979) (holding there is no cognizable constitutional claim for wrongful detention pursuant to a valid warrant). An important exception to this general principle exists when a facially valid warrant is issued because an officer inserts false statements, made "knowingly and intentionally, or with reckless disregard for the truth,"

into the warrant application or affidavit. *Franks v. Delaware*, 438 U.S. 154, 155 (1978). In such an instance, even though a facially valid warrant is issued, a cognizable constitutional claim exists against the officer who "obtain[ed the warrant] through an affidavit containing false and misleading information." *Hervey v. Estes,* 65 F.3d 784, 787 (1995). And just as the deliberate or reckless insertion of false information into a warrant application or affidavit may give rise to such a claim, so might the deliberate or reckless *omission* of material facts. *United States v. Stanert,* 762 F.2d 775, 781 (9th Cir. 1985), *amended by* 769 F.2d 1410 (9th Cir. 1985) (explaining that by "reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.")

To prove a § 1983 claim for a Fourth Amendment violation stemming from false or omitted information in a warrant affidavit or application, a plaintiff must show not only that the officer acted deliberately or with reckless disregard, but also that the false or omitted statements were material to a magistrate's finding of probable cause. *KRL v. Moore,* 384 F.3d 1105, 1117 (9th Cir. 2004). The false statements or omissions are "material" if they were "necessary to the finding of probable cause." *Franks,* 438 U.S. at 156. Thus, to determine materiality, the plaintiff must demonstrate that "the magistrate would not have issued the warrant with false information redacted, or omitted information restored." *Lombardi v. City of El Cajon,* 117 F.3d 1117, 1126 (9th Cir. 1997). Intent to mislead the issuing court is not required. *Id.* at 1124. Whether the false or omitted information was material to the finding of probable cause is a question reserved to the court. *KRL,* 384 F.3d at 1117 (9th Cir. 2004) (citing *Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir. 2002)).

### 2. Discussion

The Court must therefore determine if probable cause could still have been found with the allegedly "false information redacted," and the allegedly "omitted information restored." *Lombardi,* 117 F.3d at 1126. "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *United States v. Patayan Soriano,*

361 F.3d 494, 505 (9th Cir. 2004) (quoting *United States v. Bishop,* 264 F.3d 919, 924 (9th Cir. 2001)) (internal quotation marks omitted). "It is well-settled that 'the determination of probable cause is based upon the totality of the circumstances known to officers at the time of the search.'" *Id.* (quoting *Bishop*, 264 F.3d at 924).

Plaintiff alleges that Defendants included the "false statement" that they "verified" the identity of Plaintiff on the scene. (Doc. 24 at ¶ 72.) Plaintiff also alleges that Defendants' report did not disclose that the individual claiming to be Emily Cota claimed to not have identification, but that identification and a social security card bearing the name "Tania Hernandez" was found in her purse. (*Id.* at ¶¶ 51, 69-70.) Plaintiff also alleges that Defendants included Plaintiff's name, date of birth, and drivers' license number in Defendants' report, and that Defendants did not note that they had not verified this information on the scene but had instead obtained it from their police computer. (*Id.* at ¶ 53.) Finally, Plaintiff alleges that Defendant failed to note that Emily Cota is five feet and three inches tall and weighs 110 pounds, whereas the person on the scene claiming to be Emily Cota is five feet and five inches tall and weighs over 160 pounds. (*Id.* at ¶ 56.)

Based on Plaintiff's allegations, a "corrected" report would therefore state that the person at the crime scene did not have identification for Emily Cota, that she admitted to lying about her identity before claiming to be "Emily Cota," that she did not match Ms. Cota's physical description, that she offered a different address than the one on file for Ms. Cota, and that she was inexplicably carrying state ID and a social security card belonging to another individual. The Court is convinced that no neutral magistrate would find probable cause for the arrest of Plaintiff Emily Cota on this basis. The Court concludes that, taking Plaintiff's factual allegations as true and construing them "in the light most favorable to the nonmoving party," probable cause for a warrant for the arrest of Plaintiff Emily Cota did not exist absent the allegedly false and omitted information. *Keates v. Koile,* 883 F.3d 1228, 1234 (9th Cir. 2018) (quoting *Silvas v. E\*Trade Mortg. Corp.,* 514 F.3d 1001, 1003 (9th Cir. 2008)).

Defendants cite to *Slade v. City of Phoenix* for the proposition that probable cause

1  is not vitiated merely because further investigation would reveal that an arrestee has not
2  committed a crime. 541. P. 2d 550, 552 (Ariz. 1975). In *Slade*, the court found that officers
3  had probable cause to arrest the plaintiff based on a citizen's complaint even though the
4  officer failed to first conduct an independent investigation of the complaint. *Id.* The court
5  in *Slade* reasoned that "[p]olice depend upon the information furnished by citizens, and,
6  unless the contrary appears, they should be able to depend upon the presumption that men
7  speak the truth." *Id.* The court noted that in that case "there was an absence of
8  circumstances to cast doubt on the information given by the [complainant]." *Id.* Here,
9  unlike in *Slade,* the FAC alleges circumstances which substantially "cast doubt on the
10 information" provided to defendants. *Id.* According to the FAC, Deputies Bratt and Fortner
11 had multiple reasons to doubt Ms. Hernandez's claim. Defendants therefore had ample
12 reason to question the presumption that Ms. Hernandez was "speak[ing] the truth" in
13 identifying herself as Emily Cota, and *Slade* is therefore inapposite. *Id.*

14 Defendants also rely heavily on *Baker v. McCollan,* 433 U.S. 137, 144 (1979),
15 arguing that it is controlling authority "almost directly on point with Plaintiff's claim here."
16 (Doc. 27 at 5.) But unlike the present case, which challenges defendants' probable cause
17 to issue a warrant, the *Baker* court assumed that the plaintiff there was arrested "pursuant
18 to a warrant conforming . . . to the requirements of the Fourth Amendment." *Id.* at 144.
19 And the *Baker* court had every reason to assume that the arrest warrant was supported by
20 probable cause, as the Sheriffs "understandably concluded that they had their man" based
21 on the quality of an imposter's fake identification. *Id.* at 141. In contrast, the question here
22 is precisely whether Defendants acted objectively reasonably in concluding and reporting
23 that they confirmed the identity of Emily Cota. *Baker's* holding and reasoning therefore
24 shed little light on the issues presently before the Court.

25 The Court concludes that Plaintiff has pled sufficient factual information that, taken
26 as true, states a cognizable claim for violation of her Fourth Amendment rights stemming
27 from false or omitted information in a warrant affidavit or application.
28 . . . .

### D. Qualified Immunity

Having determined that Plaintiff has adequately alleged a violation of the Fourth Amendment, the Court now considers whether Plaintiff's claim must nonetheless be dismissed because relief is barred by the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987) (citation omitted).

In addressing a motion to dismiss based on qualified immunity, the Court must balance the competing principles that a claim must merely be "plausible on its face" to survive a motion to dismiss, but that at the same time qualified immunity is a "low bar" fashioned to protect even some government officials who wrongfully violate individuals' constitutional rights. *Keates v. Koile*, 883 F.3d 1228, 1235-38 (9th Cir. 2018). In determining whether to dismiss a claim on grounds of qualified immunity, just as on any other grounds, the court takes Plaintiff's allegations in her operative complaint as true. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 261 (1993).

It has long been held that it is objectively unreasonable for a law enforcement officer to deliberately or recklessly provide false information in a warrant application. *See, e.g, Franks v. Delaware,* 438 U.S. 154 (1978). The Ninth Circuit has held that "[i]t is clearly established that judicial deception may not be employed to obtain a search warrant." *KRL,* 384 F.3d at 1117. A § 1983 action for judicial deception does not require the subjective intent to deceive, *Lombardi,* 117 F.3d at 1123, but it requires a plaintiff to "show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *KRL,* 384 F.3d at 1117. Moreover, it is also clear that

officers "have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if insufficient details are relayed." *Motley,* 432 F.3d 1072, 1081 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012).

In determining that Plaintiff's Complaint states a cognizable claim, *supra,* the Court has already decided that the allegedly false and omitted information was in fact material to the finding of probable cause. The Court must now consider whether the materiality of the false and omitted information was so apparent that no reasonable officer could conclude otherwise. *Id.*

The Court concludes that, in the particular circumstances of this case, any reasonable officer would have known that the information allegedly misstated and omitted would be material to a finding of probable cause. The Court is particularly struck by Plaintiff's allegation that Defendant found identification naming "Tania Hernandez" in the purse of the individual claiming to be "Emily Cota." (Doc. 24 at ¶¶ 26, 65.) Together with the other omitted and misstated information, the Court concludes that not including such information in the report is exactly the sort of "objectively unreasonable" conduct which qualified immunity does not protect. *See Malley v. Briggs,* 475 U.S. 335, 343 (1986). No reasonable officer could conclude that they had probable cause to arrest "Emily Cota" when the person identifying herself as such did not fit the real Emily Cota's physical description, did not have identification, offered an address that didn't match, admitted to lying previously about her identity, and had unexplained state identification and social security cards of another individual on her person.

### E. Allegations Against Defendant Fortner

Finally, the Court considers Defendants' argument that "the allegations against Deputy Fortner lack the requisite specificity to support a claim." (Doc. 25) To properly plead a constitutional violation under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of her rights. *Iqbal,* 566 U.S. at 676-77. Plaintiff's FAC provides few factual allegations regarding the role of Defendant Fortner

in the events that gave rise to this action. Those factual allegations that do exist lump Defendants Fortner and Bratt together. In particular, Plaintiff pleads that "Deputies and/or Fortner searched the Mustang," (Doc. ¶¶ 26, 27), that "Deputy Bratt and Deputy Fortner submitted felony charges against Emily Cota" (*id.* ¶ 28), that "Deputies Bratt and/or Fortner entered information into their police computer" (*id.* ¶ 44), that the "information supplied by Deputies Bratt and/or Fortner was used to trigger a direct complaint" (*id.* ¶ 72), that the complaint was based on "the sworn testimony of Deputies Bratt and/or Fortner" (*id.* ¶ 73), that a Maricopa Judicial officer based a determination of probable cause based on "sworn information provided by Deputies Bratt and/or Fortner" (*id.* ¶ 74), and that "Deputies Bratt and/or Fortner swore that they had probable cause that Emily Cota committed the offenses" (*id.* ¶ 75.)

Notwithstanding Plaintiff's allegations that Defendant Fortner was involved in the above conduct, Plaintiff also alleges that Deputy Bratt alone prepared and submitted the Incident Report and searched the purse of Tania Hernandez, finding her identification. (Doc. 24 ¶¶ 45-65.) Moreover, the Court takes judicial notice[2] of the incident report, public record IR16-023703, which makes it clear that the direct complaint was based upon the sworn testimony of Deputy Bratt and not Defendant Fortner. As Plaintiff has failed to provide "nonconclusory factual content, and reasonable inferences from that content" that "plausibly suggest[] a claim entitling the plaintiff to relief" as to Deputy Fortner, the Court will order that Deputy Fortner be dismissed from this action with prejudice. *Moss,* 572 F.3d at 969.

. . . .

. . . .

. . . .

---

[2] The Court may take judicial notice of the Incident Report without converting the motion to dismiss into a motion for summary judgment. There are "two exceptions to the requirement that consideration of extrinsic evidence converts at 12(b)(6) motion to a summary judgment motion. First, a court may consider 'material which is properly submitted as part of the complaint'… Second, under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles,* 250 F.3d 668, 699 (9th Cir. 2001) (quoting *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). Both exceptions apply to the Incident Report at issue here.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Defendants Bratt and Fortner for Failure to State a Claim (Doc. 25) is **granted** in part and **denied** in part, as follows:

1. Count Two of Plaintiff's First Amended Complaint (Doc. 24) is **dismissed with prejudice**.
2. Defendant Fortner is **dismissed with prejudice** from this action.
3. The remaining claim in the action is Count One against Defendant Bratt.

**IT IS FURTHER ORDERED** that Defendant Bratt must file an **Answer** to Count One of Plaintiff's First Amended Complaint (Doc. 24) within **fourteen days** of the filing of this order.

Dated this 13th day of August, 2019.

_____
Honorable Rosemary Márquez
United States District Judge